If both attorneys that are going to be arguing, would you please step up to the podium and identify yourselves for the record? Good morning, Your Honors. I'm Josh Friedman, F-R-I-E-D-M-A-N, on behalf of the appellant, Sadiq Majid. Good morning, Mr. Friedman. Good morning, Your Honors. Joan Frazier, associate attorney on behalf of the people. Good morning, Ms. Frazier. Each of you will have approximately 15 minutes to present your oral argument, and from that, Mr. Friedman, you can save out some time for rebuttal. Thank you, Your Honor. All right. You may proceed. May it please the Court, counsel, again, my name is Josh Friedman. I'm here today on behalf of the appellant, Mr. Majid, who is here today. Counsel, I'd like to reserve three minutes if I could, Judge. Certainly. Thank you. Your Honors, the trial court erred in failing to suppress the evidence used to convince Mr. Majid. As that evidence was the sole basis for his conviction, that conviction should be reversed. That evidence, some narcotics that were removed from his vehicle, should have been suppressed because it was the fruit of an illegal search and seizure in violation of the Fourth Amendment. The seizure was illegal because it was based solely on an anonymous tip, a tip that did not contain the necessary indicia of a liability required on the United by this Court. Do you agree it was a lawful stop, though, by the police when he read the red light? No, Judge, and I will get to that next. The key here in this case is that the person who stopped the defendant, the person who pulled him out of the car, the officer who arrested him, Officer Hardiman, did not know he readily conceded both at the trial and at the suppression hearing. He had no idea that Mr. Majid had run the red light. He had no idea at the time he pulled him out of that car. He did not know that he had done anything wrong. But another officer did know. We don't know that. The one officer did not testify. That was Officer Simpson, who did not testify. The other officer, Officer Westbrook, who claims that he ran the red light did not indicate, there's no evidence in the record, that he conveyed that information to Mr., That's the car we're looking for. That's the car that has the drugs. So Officer Hardiman, he's the key issue here, because he's the person who set in motion the train of events here. Don't we take into account, upon review, all of the testimony to determine whether there's probable cause? We don't just look at what one officer said, but we're allowed on review to look at testimony of every witness, and we can consider testimony at trial to determine whether there was probable cause? Absolutely, Judge. All right. Two witnesses here. Officer Hardiman, who saw no illegal conduct, had no information that it was illegal conduct, and Officer Westbrook, claims that he saw him go through the red light, but he was not the moving force in the stop. He did not play a role until after Mr. Majeed was stopped, taken out of the car, physically restrained, taken to the back of the car. At that point, he then snooped into the car and found the narcotics. How many squad cars were responding to this incident? I believe there was either three or four. And at least one of them that did testify at trial said that he had observed the driver run a red light? That was, yes, that was Officer Westbrook, who again, who played no role in anything until he pulled the drugs out of the car. Well, what about, all right, let's assume for purposes of argument that we don't have this officer saying that he observed the red light stop. We do have information, though, that somebody is selling drugs out of a cab. There's testimony it was white, and there's testimony as to a specific number of the cab. It's a male driver, and it's also in the Weed Club District. So based on that, isn't that enough for the officers to stop the car? Not according to the precedent of Florida v. Jail and the cases in this court. Florida v. Jail, I would submit, Your Honor, is indistinguishable from this case. In that case, they had a tip from an anonymous informant that there was a specific black man standing at a specific spot wearing a plaid shirt, very detailed identification. Acting on that tip, they approached the stop. Of course, they saw the individual. They arrested him, and they found the gun that allegedly the informant had. Well, don't we have a little more here? I would say we have less. All right, wait. Here, there was a specific When the, I mean, are you saying the officers can't even go up to that cab after they're given a number, and they're told it's white, and that the person's selling drugs, and that they're in this specific area? I mean, aren't they obligated to investigate at least and stop, make a reasonable stop here? And then the difference between that Florida case, Florida v. Jail, is that we have testimony that the officer says he sees on the counsel, you know, the little square hole opening, a white, a packet containing white packets. Right, but that's after the fact, Judge. Just as in Florida v. Jail, they saw the gun after the fact. All right. But in Florida v. Jail, nobody said anything about a traffic violation. That's the distinction here. Right. There's a traffic violation here, and certainly upon observing a traffic violation, there's probable cause to stop the vehicle. Had there been At least for a Terry stop. Right. Had the arresting officer, Officer Hardiman, had any information that there was a traffic stop, it might be a different case. You seem to be arguing that there's some type of constitutional moving force doctrine. That the officer who did the stop had to have personal knowledge of the traffic violation. But isn't there a whole body of case law that says that the knowledge of one police officer is imputed to all the police officers? Well if there's some basis for that imputation, but there isn't on here. There's no indication that he was advised that there was a That's not what imputation means. Imputation means is that you take the knowledge from one person and you put it in the head of the other. It's not a presumption. It's an imputation. So the fact that Westbrook sees a traffic violation, doesn't that subject the defendant to be stopped? If it had, the Fourth Amendment says a reasonable police officer under the circumstances, you test the knowledge of the arresting officer. I mean, if he has no knowledge, let's assume There's some case that supports that proposition. Well That you have to separate out the police officers and put Westbrook over on the side and take Hardeman and see what's in Hardeman's mind. I mean, as Justice McRitchie said, we get to look back at the whole trial and see what reasonable suspicion there was to stop the vehicle. Do you have some authority that says that we have to take the knowledge that Westbrook has and kind of put it in a box somewhere? Well, I think the essence of the Fourth Amendment is that it is a Do you have a case that says this? Well, the Supreme Court says, and it's not directly this, but the Supreme Court says in Atwater that it does, the Fourth Amendment does not prohibit a warrantless arrest for a minor criminal offense as long as the accused has committed a criminal offense in the arresting officer's presence. This As long as what? The accused has committed a criminal offense in the arresting officer's presence, meaning they have to be aware of it. The arresting officer here, again, Officer Hardeman, was not aware of it. So I think under the law you have to exclude what Westbrook said. So if you look at this from Strictly Hardeman's perspective, he goes home to a car solely armed with an anonymous tip. Getting back to that tip, if your honors would like me to go, the Selina's case decided by this court and decided by the state has much more detail, much more factual detail than our case, and they rejected that tip. And the key is it's not just can we identify a person? Because someone could say there's a judge sitting on the 14th floor with blonde hair and glasses and a black robe and she has drugs. Under Florida v. J.L., that would not be a lawful, that would not be a lawful stop. I don't really think that's an appropriate argument. I'm sorry. Go on. That would not be a valid tip because one, it does not indicate any prediction of future action. If you cannot show, you cannot give some, or any detail in the Selina's case, they'd work with the informant on prior occasions. Here, they'd never seen this person before, had no idea whether he was a reliable informant. What about this plain view problem, though, that you have? Pardon me. Well, under the plain view doctrine, I believe it's Brown v. Texas, the officer has to be legally where he is to see, to rely on that doctrine. My position judges that since Officer Hardiman did not have a basis for pulling him out of that car, for opening that door, had that not happened, the drugs would not have been in plain view. And also, it's important to note that Officer Hardiman, the person who started this off, did not see the drugs. They were not in his plain view. So I think there's a question as to whether they were in plain view. And I think what happened here is there was a search incident to arrest. And under the Gant case, since Mr. Majid was at the back of the cab, under control, several officers, he searched that cab, even though he was not in the area where he could grab that evidence, and there was no evidence of a crime in that car, the crime of the arrest, which allegedly was a red light. He shouldn't have been reaching into that cab. So that's another basis, I think, for rejection. Do you have an issue with him being asked out of the car, even if there was a red light stop? Well, under Pennsylvania v. MIMS, there's a question as to that. I would say, under the circumstances, perhaps he could have been asked out of the car, but I think they went beyond. The test under MIMS is, is it reasonable? In MIMS' case, they saw a violation at an expired place. They asked him out of the car. They didn't pull him to the back of the car. They didn't physically restrain him. They didn't interrogate him. They strictly pulled him. They asked him to step out and give us your license. Strictly limited to the reason they pulled him over. And I don't think the court finishes a per se rule that you can always ask a person out of the car. It's based on the circumstances. Here we have three officers. There's no indication that he poses a threat. And they go beyond pulling him out of the car. They put their hands on him. They pull him back. They interrogate him. So I think we've gone beyond that. And the result of that excessive detention and interrogation was only because of that, that Officer Westbrook was able to locate the narcotics. So, again, I think the key here is, at the time that Officer Hardeman opened that door and pulled Mr. Majeed out of the car, he had no cause to believe he had committed a crime. What Officer Westbrook says I don't think is relevant at that moment. At that moment, the key in the Fourth Amendment, it's not a retrospective or hindsight analysis. What is a reasonable officer in these circumstances, with that knowledge, does he have probable cause or reasonable suspicion to pull that man out of the car? And in this case, I submit he did not. We therefore ask that the conviction be reversed. All right. Thank you, Judges. Ms. Frazier? May it please the Court, Joan Frazier on behalf of the people. There's one salient point here, and that is that once defendant drove through a steady red light, the police had probable cause to stop him and to arrest him. And once a lawful seizure had been made, the police did not even need independent source of reasonable suspicion to question him about any unrelated subject. I disagree with appellant concerning the facts of who knew what. The evidence showed, and the trial court found, that defendant drove through a steady red light several seconds after it turned red. Defendant states this morning that not all of the officers knew about that. They were not in the presence of the defendant when he ran the red light. But Officer Westbrook testified that he saw a defendant run through the red light at Clyde Corn and Halsted,  Officer Hardiman testified that Officer Simpson saw a defendant go through the red light and Simpson issued him a traffic citation for it. That's at A39 in the record. Officer Hardiman testified that Officer Westbrook told him about defendant running the red light. That's at A52-53 in the record. Was Simpson with Hardiman? No. He was in a separate car. He was behind the defendant when he ran the red light. In Atwater, the defendant was placed under arrest because she was driving in a car with her children without her seat belts on. And the U.S. Supreme Court, in reviewing the case, whether it was an unlawful seizure, held that if an officer has probable cause to believe that someone has committed even a very minor criminal offense, like a traffic violation, the defendant can be arrested without more. Therefore, the traffic light violation in this course all of itself gave the police probable cause to stop and arrest the defendant. As to defendant's argument that Officer Hardiman did not personally see him run the red light and he had no authority to arrest, first of all, as the court mentioned this morning, there is a basic doctrine of criminal law that one police officer's knowledge is imputed to another. Second, it's clear that the officers in this case were acting in concert. They all converged at the same time they communicated. Third, in footnote 11 in the Atwater decision, the U.S. Supreme Court said it was not deciding in that case whether an official has to be personally present to effect an arrest for a misdemeanor offense. The police action in this case is supported by the decision in Salinas, where the court concluded that even though the informant's tip was not sufficiently predictive, the defendant was properly seized on the basis of a traffic violation. Police could lawfully question him even on an unrelated subject, in that case drugs. Was Salinas before the Gantt case? Wasn't that decision entered before Arizona v. Gantt? I frankly don't know, Your Honor. I think it was, but anyway. Didn't that case slightly change the landscape, Arizona v. Gantt, of a minor traffic offense? No, it really has no application in this case because in that case the defendant was seized because he was driving on a suspended driver's license. And the police didn't stop there. They then conducted an investigation and they found drugs in the car. So in that case the court found that it wasn't a search incident to arrest because it was totally separate. So in this case the search that you had, first of all, there was no search because the cocaine was found in plain view. So that's no search. And to the extent there was a search later and $1,500 was found in the car, it was certainly incident to the arrest because once the search is made, once an arrest is made, in this case on the basis of drugs, the police could look to see if there was other evidence of the crime in the car, which there was. Didn't the officer also testify that when the defendant got out of the car he saw in the armrest pocket the white tackets? Well, what occurred is that Officer Hardeman asked him out of the car. And I would point out that they had to ask the defendant twice to stop his car. He kept going until he almost hit the car in front of him. So they told him twice to stop the car. He got out. Officer Hardeman walked him to the back of the car. The car door was left open. Officer Westbrook looked down and there was the cocaine in the armrest of the car. So it was certainly a plain view search. And do you agree that the case law is clear that when we consider probable cause or reasonable suspicion on review, that we can consider the entire record that facts that were testified to at the motion and the trial record? Absolutely. And that we can consider testimony of one officer, whether he refers that to another or not? In other words, whether he imparts that knowledge, we can still consider whether that is part of the equation to determine whether probable cause exists? Absolutely. So he doesn't have to tell the other person, this is what I saw? Absolutely. All right. Counsel seems to disagree. No, there's no question about that. When you have a suppression hearing and it's later looked at on review, courts can consider the entire record. That's well settled. Well, Counsel's main point, I believe, is that Officer Hardiman is the moving force, I think he called it, the moving force towards this stop. Do you agree with that, that Hardiman stopped this car and that he stopped it before he had any knowledge of this red light violation? Actually, it was Officer Simpson. Simpson stopped the car. Simpson curbed the car. Officer Westbrook drove in front of it, and then Officer Hardiman appeared on the scene. Officer Hardiman was the police officer who asked him to step out of the cab, but as I've stated, he's certainly a probable cause at that point. And even defense counsel cited Pennsylvania v. Mims, which even for safety reasons alone, the court doesn't even need to look at that. Even based on safety considerations, the officer was entitled to ask him to step out of the car. Is there anything further? Unless the court has questions, we would ask that the court affirm the trial court's dismissal, denial of defense, motion to question. Thank you. All right, Mr. Frazier. Mr. Friedman, a few words? Your Honor, we do not dispute that the court can look at the entire record. That's beyond dispute. But looking at the entire record, the key issue here, again, I would submit, is what was Officer Hardiman's knowledge when he effectuated when he pulled him out of that car? According to the court in Terry, the officer may briefly stop a person for temporary questioning if the officer has knowledge of sufficient articulable facts at the time of the encounter to create a reasonable suspicion. My position, Your Honor, is that Officer Hardiman had no knowledge. I don't believe Terry talked about imputing knowledge. Forgetting the red light, are you of the mindset that the tip, that this tip didn't even rise to the level of a reasonable suspicion? It's a cab driver selling drugs in an area, and the cab number, and it's white, and it's a male driver? I mean, if that isn't reasonable suspicion, what is it? Your Honor, in Salinas, there was, excuse me, police had worked with the informant on a number of occasions. He was not anonymous. He had provided numerous tips and led to several convictions. The informant gave a tip about narcotics being delivered to a specific address and described the person living there. The court said this is not enough. Now, it did affirm the conviction on other grounds, and those grounds were significantly that after they went. Well, that was a home, wasn't it? Right. Yeah. And isn't there something different when you've got a car moving and it's a cab and it's, you know, I mean, they're, I don't know. Your position is that that's not even a reasonable suspicion? Not at this point because there's no information about this, about the informant. They never used him before, which is a key issue. There's no predictive quality. In Salinas, the difference is they don't stop him until after they're watching them, and then they see the defendant run around, violate a traffic law. This is a citizen. This is not an informant that's been working with the police before. That's true. This is a citizen tip. It's a tip. It's a tipster. But there's no, he doesn't, one of the factors is, is there, are you just identifying a person or are you showing us a crime? In the Sparks case, excuse me, so in Salinas, they said there was no prediction of future behavior. The tip failed to establish the basis of the informant's knowledge. How do you know he has drugs? Did you see them? Did someone tell you about them? But they didn't stop him for drugs. They stopped him for running a red light. Your Honors, again, I submit the two witnesses who testified here, Hardiman did not pull him out of this cab. They may have been stopped by Officer Simpson. He did not testify. The state had that option to bring him forward to say, yes, he ran the red light and I stopped him. Didn't Ms. Frazier say the record indicates that Hardiman said Simpson told him he'd blown the red light? And I'm using, that wasn't the word. There's no indication that Simpson told him that at the time he pulled him out of the car. It may have been afterwards when they were writing the police report. But we get to look at that. We get to look at anything. You get to look at anything. Before, during, after, and at trial. But you can look at anything. But what's relevant, taking all these facts, the only relevant portion is the moment he takes him out of that car. So Salinas, as I indicate, the reason why they affirmed the conviction is because the arresting officer saw him violate a criminal law. Officer Hardiman here did not readily admit it both times. I did not. I didn't know that he violated red light. Had Officer Simpson told him that, he would have obviously responded. But he didn't. He may have known it afterwards. But the key issue here, it's not a retrospective, it's not a hindsight analysis. No one is safe in their homes if the hindsight analysis here is applied. What's relevant is what is a reasonable officer with the knowledge of that officer at that moment, can he or can he not take someone out of their car, put his hands on him, interrogate him, and rather, it seems to me, looking at the quotation from Terry that I have, and looking at this case law, you need more than the fact that someone is here with drugs. There needs to be the basis of the knowledge. There needs to be some reliability of this informant. There needs to be a predictive quality. And there are cases, as I say, Salinas and Reinhardt from this district, Spark from the Fourth District, which have much more in the way of detail, much more. And without some basis for you to show that what you're seeing is not just, you're not just identifying a person, as the court here says. It's not just, it must be reliable in its assertion of illegality, not just its tendency to identify a person. I can identify anyone in this world that may have drugs. My wife, my child, anyone. My wife is at work at 20 South Clark. She has drugs. That's all that the state's theory would require. But that's not what the Supreme Court says, and that's not what this court has ruled. So, Your Honor, I think if you ignore, if you reject as you must the knowledge that Officer Westbrook had and whatever knowledge Officer Simpson who didn't testify, all we have is an officer who had no idea there was any illegal conduct. He was only operating on a radio transmission in his ear. That's the cab. That's the cab, was based on an unreliable tip, and therefore that tip should not have been allowed to support this conviction, and therefore we ask that the conviction be reversed. Thank you all for your time. Thank you. The case was well-argued and well-briefed, and we will take it under advisement. And we do have another case, but we have a slight change in the panel, so we're going to take a recess.